## SLOAN v. HUNTER.

1. A SLAVE DEBT is collectable if not barred.
2. DEBTOR AND CREDITOR—STATUTE OF ELIZABETH.—A debtor may, under Statute of Elizabeth, secure a *bona fide* creditor by confession of judgment, provided he does not thereby delay or defraud his other creditors, or does not secure to himself some direct advantage at their expense.
3. TESTIMONY DE BENE ESSE.—A notice to take testimony *de bene esse* before Andrew Langley, and the actual taking before J. A. Longley, or John Andrew Langley, where both parties are represented at taking by counsel, is not harmful.
4. TRANSACTIONS WITH DECEDENT.—A witness may detail a conversation heard by her between a decedent and the ancestor of a party to the cause, even when he might become a party under call for creditors.
5. EVIDENCE—HEARSAY.—Where a witness answers a question as of his own knowledge, it cannot be excluded because there is great probability of the information being hearsay, but it is incumbent on objector to make that fact appear.
6. DEBTOR AND CREDITOR—FRAUD.—A CONFESSION OF JUDGMENT on a negro debt, sale of debtor's land under execution thereon at adequate price, agreement between purchasing creditor and defendant debtor before sale to permit latter to redeem land, he remaining in possession, is not a fraud on other creditors.
7. LIMITATION OF ACTIONS—LACHES.—Is this action barred by statute of limitations and laches?
8. PARTIES.—In an action to set aside a confession of judgment and deed thereunder for fraud on creditors, the party in possession of the land and administrator and heir at law of judgment creditor are necessary parties.
9. REHEARING refused.

Before TOWNSEND, J., Laurens, January, 1899. Reversed.

Action to set aside deed for fraud on creditors by J. B. E. Sloan against R. Lee Hunter, as administrator and heir-at-law of H. M. Hunter, J. H. Hunter, Mary E. Copeland, Ella S. Evans, G. W. Hunter and Henry C. Hunter. From Circuit decree, defendants appeal.

25—56

*Messrs. Ferguson & Featherstone,* for R. Lee Hunter, G. W. Hunter, J. H. Hunter and Mary E. Copeland, cite: *Administrator of judgment creditor is necessary party:* 18 S. C., 131. *Testimony of Mooney was a privileged communication:* 3 Barb., 595. *Form of confession is good:* 15 S. C., 45. *The preference was not fraudulent:* 12 S. C., 167; 21 S. C., 270; 10 Rich. Eq., 411. *Possession of Henry M. Hunter after sale is not badge of fraud:* 1 Bail., 568; 10 Rich. Eq., 253; 10 Rich. L., 74; 2 Hill Ch., 636; 21 S. C., 385; 20 S. C., 220; 22 S. C., 218. *All requisites of purchaser for value without notice here:* 14 S. C., 318. *Slave debts are collectible:* 2 S. C., 283; 2 S. C., 455. *Action is barred by statute, and should be dismissed for laches:* 16 S. C., 555; 37 S. C., 369. *As to nulla bona return:* 28 S. C., 113

*Messrs. J. F. J. Caldwell, O. L. Schumpert* and *Hunt & Hunt,* for Ella S. Evans and Henry C. Hunt, cite: *Parties in possession of 130 and 50 acre tracts and personal representative and heir-at-law of R. C. Hunter are necessary parties:* 5 Laus., 183; 48 S. C., 165; 19 Wall., 94. *Action is barred by statute of limitations:* 1 Hill Ch., 113, 210; 10 Rich. Eq., 346; 37 S. C., 369; 33 S. C., 530; 6 Rich. Eq., 102; 7 Rich. Eq., 444. *And by plaintiff's laches:* 95 U. S., 160; 94 U. S., 811; 2 Wall., 95; 124 U. S., 187; 45 N. J., 413; 25 S. C., 112; 24 S. C., 90.

*Messrs. N. B. Dial* and *F. P. McGowan,* contra, cite: *In law view of case we have proper parties before the Court:* 19 S. C., 274, 402; 27 S. C., 225. *Such objection is waived if not made by demurrer:* 1 S. C., 119; 9 S. C., 277; 54 S. C., 206. *Knowledge of fraud is alleged to have been obtained within six years, and without showing to contrary action is not barred:* Code, 6; 23 S. C., 410, 342. *Nulla bona is not necessary except in cases inter vivos:* 48 S. C., 165; 1 S. C., 91; 20 S. C., 508; 33 S. C., 530. *No claim of lien on homestead until death of judgment debtor:* 21 S. C., 126; 41 S. C., 110. *In cases of fraud, creditor may sell*

*under execution or bring action in equity. to set aside:* 53 S.
C., 586.   *This was a scheme on part of debtor to enjoy
property at expense of his creditors and, therefore, void:* 2
Bail., 324; 16 S. C., 586; McM. Eq., 28; 1 Hill Ch., 297.

January 2, 1900.   The opinion of the Court was de-
livered by

MR. JUSTICE JONES.   The plaintiff is a judgment credi-
tor of Henry M. Hunter, deceased, and the defendants are
the heirs-at-law and administrator of said deceased.   The
main object of the complaint is to set aside as fraudulent a
confession of judgment by Henry M. Hunter to his brother,
Robert C. Hunter, and the sale of a 500 acre tract of land
by the sheriff to Robert C. Hunter under said judgment,
and a subsequent conveyance thereof to the defendant, J. H.
Hunter, by J. H. T. Hunter, the only heir-at-law of R. C.
Hunter, deceased.   The Circuit decree sets aside the said
judgment and sale thereunder and the subsequent convey-
ance as fraudulent and void.   The complaint further sought
and the Circuit decree adjudged a sale of this 500 acre tract
and three other tracts, designated as the 150 acre tract, and
the 130 acre tract, and the 50 acre tract, as the property
of said Henry M. Hunter, with a view to distribution
among creditors.   The real question in the case on the
merits is whether the confession of judgment was made
with intent to defraud the creditors of Henry M. Hunter;
for if the confession was *bona fide,* and R. C. Hunter was
the *bona fide* purchaser at sheriff's sale, the creditors of
Henry M. Hunter are in no wise concerned with the subse-
quent transfer of the heir-at-law of R. C. Hunter to the de-
fendant, J. H. Hunter.   Furthermore, if said confession
and sale thereunder was not fraudulent, then the 500 acre
tract is beyond the reach of Henry M. Hunter's creditors,
and plaintiff has a plain and adequate remedy at law to sell
all the interest of Henry M. Hunter in the other tracts.
We, therefore, treat the case first on its merits.

The theory of the complaint is that the confession was

merely pretensive, and was made for the purpose of delay-
ing and hindering the creditors of Henry M. Hunter, and
with intent to secure said land to said Henry M. Hunter
and his children. In sustaining the charge of fraud, the
Circuit Judge was evidently influenced by the view that the
confession was for a pretensive debt. But we find
no evidence impeaching the existence or the *bona fides*
of the debt. The confession recites that the notes for
which it was made, aggregating $6,015.55, were given in
lieu of a note for the purchase of slaves by James O. Duck-
ett to R. C. Hunter, Duckett having resold the slaves to
Henry M. Hunter, who assumed Duckett's liability. The
existence of such a debt was also shown by the testimony of
plaintiff's witness, Miss Kate Martin, who was employed in
the household of Henry M. Hunter at the time of the confes-
sion. The Circuit Judge was in error in supposing that a
slave debt was "uncollectible." *Calhoun* v. *Calhoun*, 2 S.
C., 283; *Brewster* v. *Williams*, 2 S. C., 455; and there was
no evidence that the claim was "out of date," and the law
does not prevent one from acknowledging and paying a debt
merely because it is old. To secure this *bona fide* debt,
Henry M. Hunter had the right, though in failing circum-
stances, to prefer his brother by a confession of judg-
ment, so far as the Statute of Elizabeth or the com-
mon law is concerned, provided he did not thereby
intend also to delay or defraud his other creditors, or did not
thereby, as the price of the preference, secure to himself a
direct advantage at the expense of his creditors. *McElwee*
v. *Kennedy*, 56 S. C., 154. The land was sold at public
outcry by the sheriff in 1883, when there existed plaintiff's
judgment and a number of other judgments against Henry
M. Hunter, including a confession of judgment by Hunter
to M. S. Bailey for $4,000, on the same day of the confes-
sion to R. C. Hunter. There was no evidence of any im-
proper conduct of either Henry M. Hunter or R. C. Hunter
at said sale. R. C. Hunter became the purchaser at $5,350,
a fair price for the land. It is true this amount was not

credited on the judgment, and that some years afterwards this judgment was reversed by the administrator of R. C. Hunter for the whole amount, on default of Henry M. Hunter. But these facts do not show *mala fides* in R. C. Hunter and Henry M. Hunter in the original judgment and sale by the sheriff thereunder. It is also true that Henry M. Hunter remained on the land from the time of sale to his death in 1893, but the Circuit Judge is mistaken in supposing that the testimony of R. Lee Hunter, who lived with his father, Henry M. Hunter, on the land until the death of his father, "shows that Henry M. Hunter was entitled to one-half of the rents," thus indicating that Henry M. Hunter had an interest in the land. R. Lee Hunter's testimony was to the effect that he and his father farmed the land together, that his father was to get half of the "profits," and that they paid rent for the land to J. H. T. Hunter, the only heir at law of R. C. Hunter. It is well settled that if Henry M. Hunter had conveyed the land directly or privately to R. C. Hunter and had remained in possession, such possession is not conclusive evidence of fraud, but may be explained. *Nelson* v. *Good,* 20 S. C., 231. The possession in this case is fully explained by the payment of rent to another as the owner. But, further, the sale to R. C. Hunter was a public sale, and as shown in *Guignard* v. *Aldrich,* 10 Rich. Eq., 253, if the sale is otherwise fair, it is an insufficient badge of fraud for the purchasing creditor to permit the debtor to remain in possession. The Court said: "Undue weight * * * has been attached to the fact that Harley remained in possession of the property after sale. The principle that vendors remaining in possession of the property is a badge of fraud, does not apply to sheriff's sales * * * Conceding the sale to have been fair and the prices paid full, and at that conclusion we have arrived, what mischief or injustice is there to any one, if the defendant in execution is permitted by the purchaser to remain in possession of the property which has been sold?" But it is supposed that the testimony of Miss Kate Martin shows a corrupt agreement between Henry M.

Hunter and R. C. Hunter, by which the property was to be placed beyond the reach of creditors. Before referring to that testimony we dispose of certain preliminary questions as to its admissibility. First, the testimony was taken *de bene esse* before J. A. Longley or John Andrew Langley, whereas it was noticed to be taken before Andrew Langley. As defendants were represented by attorneys at the taking of the deposition and were in no wise prejudiced or misled by the slight difference in the sound of the name given in the notice and the real name of the officer, we see nothing in this point. Second, it is objected that this testimony is obnoxious to sec. 400 of the Code, it being established that Miss Martin is a creditor of Henry M. Hunter, deceased, and could come into this case as a creditor under the calling in thereof. We are of opinion that since it does not appear that the witness was testifying as to a transaction or communication between the witness and the deceased, but was as to a transaction or communication between the deceased and another person, her testimony is not to be excluded under section 400. *McLaurin* v. *Wilson,* 16 S. C., 402; *Norris* v. *Clinkscales,* 47 S. C., 492. Third, the testimony was not liable to exclusion as hearsay, for while there is great probability that much of her testimony was founded on what she had heard, still it was given in answer to a question as to her knowledge, and if it was really hearsay, it was incumbent on the objector to make that fact appear to the Court.

The testimony was as follows: "Ans. 5. Henry M. Hunter owed R. C. Hunter a debt called an old negro debt. The amount I do not know, but they compromised and agreed that the debt was $3,600, as I remember it; it was agreed that this 500 acre tract should be sold, and R. C. Hunter bid in the land, and was to take title in his own name and the taxes was to be paid in R. C. Hunter's name. R. C. Hunter agreed to give Henry M. Hunter time in which to redeem the land. Henry M. Hunter was to pay whatever amount he could each December, and when the

$3,600 and interest were paid, R. C. Hunter was to convey the land to some one, to be held in trust for the children of said Henry M. Hunter—to protect the property to said children.    Henry M. Hunter continued to live on said tract of land by reason of the above agreement."    But this testimony does not justify an inference of fraud against other creditors, provided it be true, as we hold to be true, that the confession was for a *bona fide* debt, and the sale by the sheriff was at a fair price.    R. C. Hunter having fairly bought the land, could, if he desired, befriend the family of his unfortunate brother by allowing it to be redeemed for their benefit. Having the right to do as he pleased with his own, other creditors could not convert his generosity into fraud.    In the case of *Guignard* v. *Aldrich, supra,* the Court, by Chancellor Dargan, said: "Suppose it to have been proved that Aldrich, before the sale, had said to Harley that if he purchased his property he would let him have it back and give him an opportunity of redeeming it; and that after his purchase he had fulfilled this promise and agreement; and Harly had accordingly resumed the possession of his property—the sales being otherwise fair and the prices adequate—where is the fraud or vice of such an agreement?    My impression is that such arrangements at the call of friendship are not at all infrequent, nor condemned by any legal or moral obligation."    Under our view of the evidence, the complaint should have been dismissed on the merits.    But there is strong reason for holding that the statute of limitations and the laches of plaintiff should bar the action.

Furthermore, the proper parties are not before the Court. It appears that Ursula Wilson is in possession of the 150 acre tract, and that W. H. Workman is in possession of the 50 acre tract, claiming in their own right, and neither is made a party to this suit.    Moreover, neither the administrator nor the heir at law of R. C. Hunter is before the Court, and they are necessary parties to an action to set aside as fraudulent the judgment in favor of R. C.

Hunter and the sale thereunder to R. C. Hunter. *Sheppard* v. *Green,* 47 S. C., 165.

The judgment of the Circuit Court is reversed and the complaint dismissed, without prejudice, however, to any rights which the children of Henry M. Hunter may claim to have in said land. as among themselves.

Petition for rehearing filed and remittitur stayed until January 24, 1900, when petition was refused and remittitur sent down.