### 6533

## SARRATT v. GAFFNEY CITY CARPET MANUFACTURING CO.

1. RES JUDICATA—RECEIVER.—An order made after notice embracing everything necessary for the discharge of a receiver, not in direct terms confirming the report of the referee or approving the accounts of the receiver, but reciting the report and referring to the amount found by the clerk to be in hands of receiver, providing for discharge of receiver after payment of certain accounts, is *res judicata* of the account of the receiver.

2. JUDGMENT.—CIRCUIT JUDGE HAS NO POWER AT CHAMBERS to set aside a judgment on ground of surprise or excusable neglect.

3. OPENING JUDGMENTS.—Where attorneys had ample notice the Court would be asked to adjudicate the accounts of a receiver; case on docket ready for a hearing; attorneys of creditors in possession of accounts of receiver for sufficient time to file exceptions; the Court should not open judgment after order passing on accounts and discharging receiver and permit attorneys of creditors to file exceptions to the report, on ground of excusable neglect, because one counsel for creditors was in Europe when accounting was had, but returned in time, there being local counsel in the State all the time.

4. To OPEN A JUDGMENT there must be a *prima facie* showing from which Court itself may infer the relief asked for would be in furtherance of justice, it is not sufficient for the moving party to say as a legal conclusion the judgment is "improper or irregular."

Before HYDRICK, J., Cherokee, February, 1906. Affirmed.

Action by John I. Sarratt against Gaffney Carpet Manufacturing Co. *et al.* From order refusing to open order discharging receiver, creditors, Girard National Bank, Corn Exchange Bank and Lykes Bros., appeal.

*Messrs. Saml. P. Tull* and *Smythe, Lee & Frost,* for appellants, cite: *Order requested of Judge Hydrick should have been granted, because it is not inconsistent with that of Judge Klugh:* 24 Ency., 919; 17 S. C., 40; 37 S. C.. 517; 43 S. C., 477. *The order of Judge Klugh was not a final but an administrative order:* 2 Ency., 72; Dud., 29; 9 Rich. Eq., 423; 69 S. C., 187; 72 S. C., 433; 15 S. C., 166; 23 Ency.,

1128; 87 Amer. Dec., 591; 1 S. C., 111. *The order of Judge Klugh was taken by default and could be modified by subsequent Judge:* 15 Ency. P. & P., 353; 2 Rich., 17; 9 Abb. Pr. R., 233.

*Mr. J. C. Jeffries,* for receiver, contra, cites: *What petitioners must show to open judgment:* 32 S. C., 86; 36 S. C., 86; 36 S. C., 578; 51 S. C., 164; 13 S. C., 160. *Judge cannot vacate judgment at chambers:* 44 S. C., 383; 24 S. C., 400; 3 S. C., 438.

May 2, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. By order of the Court of Common Pleas, dated September the 20th, 1904, H. D. Wheat, receiver of the Gaffney Carpet Manufacturing Company, was required to make an accounting to Eb. Jeffries, clerk of the Court for Cherokee County, for all moneys received and disbursed by him; and the clerk was directed to report to the Court the result of the accounting. On March 1st, 1905, the receiver filed with the clerk a condensed statement showing the collection of two hundred and eighty-five thousand and five hundred and five dollars and thirty-seven cents and the disbursement of two hundred and eighty-three thousand and four hundred and forty-one dollars and one cent. On the same day the clerk, without notice to the creditors, filed his report in which he referred to the statement as an accounting accompanied by vouchers. There was, however, no real accounting as the debit and credit entries were mere aggregations of different kinds of receipts and disbursements without items, and there was no verification on the part of the clerk by full examination of the original vouchers and entries. On this point the clerk says in his report: "In the short time I had at my disposal, it was impossible for me to check all entries and examine all vouchers, etc., and if it was contemplated by the parties in interest, I would recommend that further time be given

and that an expert accountant be appointed for said pur-
pose." In a supplemental report, filed August the 24th,
1905, the clerk says: "The attorneys for certain creditors
requested that Mr. H. D. Wheat, receiver, file in my office
an *itemized* statement of all the receipts and disbursements
for said mill for the entire period of his receivership, and I
beg to report the same has been done this day and is now
on file in this office." This accounting was also taken with-
out notice to creditors, but on the day the accounting was
filed, J. C. Jeffries, Esq., attorney for the receiver, served
notice on Messrs. Smythe, Lee & Frost, attorneys for the
Corn Exchange Bank, Girard National Bank, and Sykes
Brothers, large creditors of the insolvent corporation, notice
of the filing of the account and report. It does not appear
that any objection was made to the taking of the accounts
without notice, but on September 13th, 1905, at the request
of Mr. Smythe, one of the attorneys for the creditors above
named, the itemized account was sent to him at Pendleton
for examination. Nothing further was done until October
30th, 1905, when counsel for the receiver served notice on
Messrs. Smythe, Lee & Frost, that on November the 3d,
1905, or as soon thereafter as counsel could be heard, a
motion would be made "for an order allowing the receiver,
H .D. Wheat, to pay for making the last itemized account,
which was made at your request, also an order for sale of all
old books, accounts, etc., belonging to the said estate, and
for the distribution of the assets, etc., and every thing that
is necessary for the discharge of the said receiver, or for the
said funds to be paid into the hands of the clerk of the said
Court and for the receiver to be discharged."

When this notice was received the itemized account was
in the hands of Mr. Tull, of Philadelphia, the attorney for
the creditors above named, who was in direct communica-
tion with them. Mr. Tull's examination of the account
had been delayed by his absence in Europe. This last
notice was immediately communicated to Mr. Tull, who
telegraphed Mr. Smythe on November the 3d, 1905, asking

postponement for a few days until he could prepare certain exceptions to the report. Mr. Smythe on the same day communicated the request to Mr. Jeffries, attorney for the receiver, who declined to agree to a postponement. The counsel for appellants made no further response to the notice and on November the 11th, 1905, an order was taken in the absence of counsel for the creditors named, with consent of all other creditors, which recites: "The receiver, having at the request of attorneys for creditors prepared an itemized account since his last report, of all transactions, disbursements, etc., and of his conduct in the matter, and having filed the same with the clerk of this Court, the said clerk having filed his supplemental report to the same on the 24th day of August, 1905, and attorneys for all parties in interest having received due notice thereof, and there being no exceptions filed to the same, and the said report or account showing that the receiver has on hand two thousand, one hundred and twelve and six one-hundredth ($2,111.06) dollars; cost of making of the same being one hundred and four and thirty-five one-hundredth ($104.35) dollars, with the additional cost to the clerk of this Court for making supplemental report $17.20."

The order then provides for the sale of the old accounts and other assets of the estate, and concludes with this provision: "IT IS FURTHER ORDERED, That after said sale, the said receiver shall distribute all moneys, which he shall obtain as the proceeds thereof, together with the amount he will have on hand, after deducting the amounts herein provided for, to the creditors of the said Gaffney Carpet Manufacturing Company as provided by previous orders of this Court, taking receipts of them or their attorneys for same, and after the said funds shall have been so distributed, the said receiver shall be considered discharged and relieved from said office."

Thereafter the Corn Exchange Bank, Girard National Bank, and Sykes Brothers by petition verified on December the 11th, 1905, asked to be allowed to file exceptions to the

clerk's report and show that credits allowed to the receiver aggregating fifteen thousand five hundred seventy-two dollars and sixty-four cents were "irregular, unauthorized and improper." After hearing the matter at chambers, at the instance of the petitioners, Judge Hydrick on the 16th of February, 1906, filed an order refusing the relief asked, on the ground that Judge Klugh's order was in effect a confirmation of the report of the clerk and an adjudication of the accounts of the receiver, and was therefore such a judgment as he had no power to vary or modify.

The first question made by the appeal is whether the correctness of the account of the receiver is *res judicata* under the decree of Judge Klugh. It is true, the decree does not in direct language confirm the report of the clerk or approve the account of the receiver, but it recites the report and after referring to the amount found by the clerk to be in the hands of the receiver, provides for the discharge of the receiver after distribution by him among the creditors of the proceeds of a sale of certain assets then in his hands, "together with the amount he will have on hand after deducting the amounts herein provided for." "The amount he will have on hand" seems very plainly to refer to the aggregate of the amount referred to in the order as reported by the clerk, and the proceeds of sale of assets undisposed of, less the amounts the receiver was ordered to disburse. When, in addition to this, it is considered that the correctness of the account of the receiver was the sole matter at issue between the parties, that on this point the itemized account had been for some time in the hands of counsel for the petitioners for their scrutiny, and that the notice under which the decree was taken was to the effect that an order would be applied for "embracing everything necessary to the discharge of the said receiver," it is impossible to doubt that the decree was intended to adjudicate the accounts of the receiver and should be so construed.

Referring to the subject of former adjudication, the Court says in *Hart* v. *Bates,* 17 S. C., 35, 40, "It seems,

therefore, that to make out the defense at least three things are necessary: the parties must be the same, or their privies; the subject matter must be the same, and the precise point must have been ruled." In the Duchess of Kingston's case, 2 Smith's Leading Cases, 424, it is held that the plea of *res judicata* cannot be extended to embrace any matter to be inferred by argument from the judgment. A judgment nevertheless, does conclude the parties and their privies, not only as to matters adjudicated in direct and explicit language, but also as to all matters which are by plain implication covered by it. *Lawton* v. *Perry*, 45 S. C., 320, 23 S. E., 53; *Lea* v. *Lea*, 96 Am. Dec., 772, note. For these reasons we agree with the Circuit Judge that the accounts of the receiver were adjudicated by Judge Klugh's decree.

It is not to be doubted, however, that upon a showing of surprise or excusable neglect the Court of Common Pleas, even after such adjudication, for fraud or mistake could open the accounting under section 195 of Code of Procedure; and the Court would lend a more ready ear to such an application made before the case had been finally disposed of. A Circuit Judge, however, has no power at chambers to set aside a judgment on the ground of surprise or excusable neglect under section 195. *Turner* v. *Foreman*, 47 S. C., 31, 24 S. E. 989.

But even if the motion or petition had been presented to the Court instead of a Judge at chambers, we do not think the showing would have warranted the opening of the judgment. The petitioners had ample notice that the Court would be asked to adjudicate the accounts.

The itemized accounts were placed in the hands of able and active counsel for the petitioners on September the 19th, 1905, and they were allowed from that time until November the 3d, following, before being required by counsel for the receiver to present their objections thereto. As we understand, the cause was on the docket for hearing and it was the obvious right of the counsel for the receiver to take appropriate orders when it was called, especially to ask the

Court to consider a motion of which he had given due notice. The counsel for petitioners had no reason to suppose further time would be granted, and due diligence required that objections to the accounting should have been ready for presentation when the Court was ready to consider the case or at least that counsel should have been present and asked the Court for further time. Neither Mr. Tull nor Mr. Smythe was in attendance on the Court though they had full notice the matter would be called for adjudication. Mr. Tull's absence in Europe for a part of the time after the accounts were in the hands of counsel for the petitioners for examination can make no difference, if for no other reason, because the petitioners had other capable counsel. *Claussen* v. *Johnson*, 32 S. C., 87, 11 S. E., 209; *Sullivan* v. *Shell*, 36 S. C., 578, 15 S. E., 722.

It is to be observed further that in the proposed exceptions to the accounting of the receiver there is nothing more than a statement that certain items therein mentioned are "irregular, unauthorized and improper." No facts were adduced tending to show the items mentioned were not properly credited to the receiver. To open a judgment there must be a *prima facie* showing from which the Court itself may infer the relief asked would be in furtherance of justice; it is not sufficient for the moving party to say as a legal conclusion that the judgment is improper or unjust.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.