18083

Worthey HAYES, Respondent, v. Lonzo ISRAEL, J. E. Israel, Leo Israel, ·Cornie Israel, Irene Duncan, Randal McCormick, and Shirley Faye McCormick, of whom Lonzo Israel is, Appellant.

(131 S. E. (2d) 506)

*Messrs. Stevens & Holt,* of Loris, *for Appellant,*

*Messrs. J. Reuben Long* and *Jack H. Page,* of Conway, *for Respondent,*

June 12, 1963.

TAYLOR, Chief Justice.

This appeal arises out of an action brought in equity by plaintiff to establish an irrevocable contract to make a will. The Circuit Judge concurred with the Master's Report, which found that mutual wills were executed by plaintiff and his deceased wife pursuant to contract. From this judgment the defendant, Lonzo Israel, is the only Appellant.

Plaintiff was married to Lizzie Hayes in 1911 and shortly thereafter he purchased a farm from her father. Plaintiff's wife later inherited approximately 75 acres from her father adjacent to the property purchased by plaintiff. This property, upon which plaintiff and his wife erected several buildings, constitutes the bulk of Lizzie Hayes' estate. There are no living children of this marriage.

It is alleged in the complaint that on or about January 20, 1937, plaintiff and his wife entered into an agreement to execute mutual wills, whereby upon the death of one the other would receive all of the property, and that pursuant to said agreement, they both executed mutual and irrevocable wills on January 20, 1937, devising all of their property to the other. The plaintiff further alleges that his wife in violation of her agreement and without any knowledge or notice to plaintiff executed a purported will on or about November 4, 1957, in which she attempted to devise and bequeath her property to the defendants after reserving a life estate in plaintiff to the house and furniture.

Only the defendant Lonzo Israel submitted an answer which contained a general denial and plea of the Statute of Frauds as a bar to the action.

This appeal is based upon one exception to the Circuit Judge's Order, which presents the question of whether there is evidence to support the findings of the Master concurred in by the Circuit Judge.

In equity cases, findings of fact by a Master concurred in by a Circuit Judge will not be disturbed on appeal unless it is shown that such findings are without evidence to support them or are against the clear proponderance of the evidence.

"Reciprocal bequests in separate wills of husband and wife are not in themselves sufficient proof that the wills were executed pursuant to an agreement to make wills that should stand without revocation. In order to establish that separate wills containing reciprocal provisions were the result of a contract between the testators, there must be proof of the contract aliunde the wills, notwithstanding that the testators were husband and wife. The wills of husband and wife executed at the same time, before the same witnesses, and strictly reciprocal in their terms, are not, in the absence of a recital that they are made pursuant to a contract, in themselves sufficient evidence of an enforceable contract between the testators for the execution of the wills." 169 A. L. R. 76 (Footnotes) ; *Looper v. Whitaker et al.,* 231 S. C. 219, 98 S. E. (2d) 266.

This Court has held in many cases that when an oral contract to make mutual wills is relied upon it is necessary that such contract be established by clear, cogent and convincing evidence which carries irresistible conviction to the mind that such a contract actually existed and that the parties thereto understood and acquiesced to its terms.

Absent an express provision in the will that it was executed pursuant to contract, proof of a testamentary contract may be supplied by competent witnesses who testify to admissions of the testators or such proof may result as an implication from the circumstances and relations of the parties and what they have actually provided for by the instrument. *Ellisor v. Watts,* 227 S. C. 411, 88 S. E. (2d) 351.

.There is no question but what plaintiff and his wife executed reciprocal wills, the two wills having been admitted into evidence; and there appears no express provision in either will that they were executed pursuant to a contract to do so. The Courts are, therefore, required to look to other evidence in order to determine the intent of the parties at the time of the making of the wills.

Mr. Earl Shelly testified that he was present and witnessed the two 1937 wills and that these were the only wills he had ever witnessed; that Mrs. Hayes said at that time: "* * * 'We don't have any children and we decided to make a will to each other so whichever one dies, the other will have our property.'" He also testified that plaintiff was present and said: "* * * 'That is our agreement.'"

Elnita Stroud, who had known the Hayes since 1917 and had nursed Mrs. Hayes for about two years before she died, testified that she was told in a conversation with Mrs. Hayes while nursing her that she and her husband had made an agreement to will their property to each other as they wanted to keep it together.

Plaintiff testified he was in bad health prior to execution of the said 1937 wills and that his wife was the one who suggested that they make mutual wills. Plaintiff stated without objection: "* * * my wife came to me and told me that we didn't have any children to heir our property and asked me if I would agree to give her my will if she would give me hers and to fix it so that the first one that died all the property would belong to the other one." In accordance with that agreement, plaintiff testified he made a will leaving her all of his property and that in return she made a will leaving everything she had to him. Plaintiff further testified that he would not have so provided in his will if she had not agreed to leave her property to him. Plaintiff also testified he knew nothing about the will his wife made in 1957 until the day after the funeral.

Judge H. E. Blanton, former Probate Judge for Horry County, testified that he was Magistrate at Floyd's Town-

ship in 1937 and that he prepared the two 1937 wills after talking to plaintiff and his wife. Judge Blanton further testified: "* * * Mr. Hayes and his wife came up there and wanted to make wills to each other. I don't know which one mentioned it, but they were both talking about the same thing. * * * They said they wanted to make a will to each other. They said they didn't have any children and they wanted the survivor to get all of the property."

Both husband and wife apparently were aware of the importance of title to property in their business dealings with each other as on the day of the making of the wills the husband purchased from his wife six acres and paid cash therefor for the purpose of building a packhouse thereon, testifying that he would not have done so without acquiring title thereto. Further, he testified: "I told her we had been building on her land and she didn't want to build anymore across the branch, so I told her she just as well sell me some land so I could have some on my land."

When the foregoing testimony is taken into consideration along with the circumstances under which the wills were made, this Court cannot say that the findings of the Master, concurred in by the Circuit Court, are without evidentiary support or against the clear preponderance of the evidence.

We are, therefore, of opinion that all exceptions to the Order appealed from should be overruled and the Order affirmed; and it is so ordered.

Affirmed.

MOSS, LEWIS, BUSSEY and BRAILSFORD, JJ., concur.